UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

HARRY JAMES SMISKIN and KATO
SMISKIN,

                    Defendants.

NO. CR-04-2107-EFS
NO. CR-04-2108-EFS

**ORDER DENYING GOVERNMENT'S
MOTION FOR RECONSIDERATION**

     BEFORE THE COURT, without oral argument, is the Government's Motion
for Reconsideration. (CR-04-2107-EFS: Ct. Rec. 53; CR-04-2108-EFS: Ct.
Rec. 56.)  On June 24, 2005, the Government moved the Court to reconsider
its May 31, 2005, Order (CR-04-2107-EFS: Ct. Rec. 52; CR-04-2108-EFS: Ct.
Rec. 55) granting Defendants' Motions to Dismiss (CR-04-2107-EFS: Ct.
Rec. 21; CR-04-2108-EFS: Ct. Rec. 19). After thoroughly reviewing all
materials related to the Government's motion and relevant legal
authority, the Court is fully informed and denies the Government's
request to withdraw its May 31, 2005, Order and to reinstate the criminal
charges dismissed in that Order.

///

///

ORDER ~ 1

**A. Background**

Defendants Harry Smiskin and Kato Smiskin, both enrolled members of the Confederated Tribes and Bands of the Yakama Nation (the "Yakama Tribe"), were indicted on charges of violating the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2342(a). (CR-04-2107-EFS: Ct. Rec. 1; CR-04-2108-EFS: Ct. Rec. 1.)

Defendants challenged their indictments in separate but related Motions to Dismiss. (CR-04-2107-EFS: Ct. Rec. 21; CR-04-2108-EFS: Ct. Rec. 19.)  In general, Defendants argued they could not be prosecuted under the CCTA for failure to pre-notify Washington State of their intent to transport unstamped cigarettes because the pre-notification requirement violated their right to travel under the Yakama Treaty of 1855 (the "1855 Treaty").  On May 31, 2005, finding Defendants' alleged illegal conduct was protected under the 1855 Treaty, the Court granted Defendants' motions and dismissed the CCTA criminal charges against them. (CR-04-2107-EFS: Ct. Rec. 52; CR-04-2108-EFS: Ct. Rec. 55.)

**B. Federal Laws of General Applicability**

The Government urges the Court to withdraw its May 31, 2005, Order and reinstate the CCTA charges Defendants.  In doing so, the Government primarily relies on the Ninth Circuit's opinion in *United States v. Farris*, 624 F.2d 890 (9th Cir. 1980), and a general explanation of why the CCTA, a federal law of general applicability, applies to the Yakama Tribe.  Meanwhile, Defendants continue to believe they are exempt from

prosecution arguing that application of the CCTA to their respective cases, would abrogate rights guaranteed to Defendants by the 1855 Treaty.

It is undisputed that federal laws of general applicability such as the CCTA are "presumed to apply with equal force to Indians." *United States v. Baker*, 63 F.3d 1478, 1484 (9th Cir. 1995). However, under a clearly stated exception, a federal law of general applicability "that is silent on the issue of applicability to Indian tribes will not apply to them if . . . the application of the law to the tribe would abrogate rights guaranteed by Indian treaties. . . .'" ("Treaty Exception"). *Id.* at 1485 (citing *Donovan v. Couer d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (9th Cir. 1985)).

In *Farris*, the Ninth Circuit held the Organized Crime Control Act ("OCCA"), also a federal law of general applicability, could be used to prosecute Puyallup Tribal members involved in a gambling business deemed illegal under Washington State law. *Farris*, 624 F.2d at 892-894. In the course of making its decision, the Ninth Circuit reviewed the Puyallup Tribe's treaty with the United States Government (the "Treaty of Medicine Creek") and determined the Treaty Exception did not prohibit the OCCA's application against Puyallup members because the Treaty of Medicine Creek did not contain "specific language permitting gambling or 'purporting to exempt Indians from the laws of general applicability. . . .'" *Id.* at 893. Moreover, the court noted "general treaty language such as that devoting land to a tribe's 'exclusive use' is not sufficient" to bring the Treaty Exception into play. *Id.*

ORDER ~ 3

Based on *Farris*, the Government does not believe Defendants are exempt from complying with the CCTA because the 1855 Treaty does not contain specific language permitting the transportation of contraband cigarettes.  Instead, in relevant part, the 1855 Treaty simply states that Yakama Tribal members have "the right, in common with the citizens of the United States, to travel upon all public highways" (the "Right to Travel Clause"). Treaty with the Yakamas, 12 Stat. 951 (1855).  As the Government insists, nowhere in the 1855 Treaty, let alone the Right to Travel Clause, is the transportation of contraband cigarettes explicitly discussed.

The Court recognizes the significance of the *Farris* opinion as it relates to the CCTA charges brought against Defendants.  In *Farris*, as is the case here, all defendants were charged under a federal statute in which a necessary element of the offense was determined by state or local law.  Specifically, the OCCA provides: "Whoever conducts, finances, manages, supervises, directs, or owns all of part of an illegal gambling business shall be fined. . . ." *Farris*, 624 F.2d at 892 (quoting 18 U.S.C. § 1955(a)).  Furthermore, the OCCA states that "illegal gambling business," as used above, "means a gambling business which is a violation of the law of the State or political subdivision in which it is conducted." *Id.* (citing 18 U.S.C. § 1955(b)).  This is similar to the CCTA, under which it is "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes," 18 U.S.C. § 2342(a), and "contraband cigarettes" are defined

ORDER ~ 4

in part as certain cigarettes possessed by persons not authorized to possess them under state law, 18 U.S.C. § 2341(2). Thus, under both the OCCA and the CCTA, a defendant may be convicted only if it is proved he or she was engaged in certain conduct prohibited by state law.

In *Farris*, the Ninth Circuit determined that no specific language in the Treaty of Medicine Creek specifically guaranteed Puyallup Tribal members the right to operate what would be an illegal gambling business under Washington State law. Although, the court in *Farris* stated that "general treaty language such as that devoting land to a tribe's 'exclusive use' in not sufficient" to protect Puyallup Tribal members from OCCA prosecution, no explanation was given as to why the clause, assuming it was contained in the Treaty of Medicine Creek, did not provide such protection. *Farris*, 624 F.2d at 893.

In this case, the Court's dismissal of the CCTA charges against Defendants is easily reconciled with the outcome in *Farris* by virtue of the fact the *Farris* opinion dealt with a different treaty and addressed different rights. Additionally, rather than merely containing a general clause relating to the exclusive use of land as found in the Treaty of Medicine Creek, the 1855 Treaty contains a more detailed clause that sets forth a specific right to travel. Additionally, the Right to Travel Clause has been the subject of an extensive interpretative process that included numerous findings of fact and conclusions of law relating to the rights protected by Right to Travel Clause, *see Yakama Indian Nation v. Flores*, 955 F.Supp 1229 (E.D. Wash. 1997), which was ultimately affirmed

by the Ninth Circuit, *Cree v. Flores*, 157 F.3d 762, 769 (9th Cir. 1998). The Court continues to believe its initial determinations were correct and that the Right to Travel Clause, as clarified by the Ninth Circuit in *Cree*, 157 F.3d 762, satisfies the "specific language" requirement described in *Farris*.

**C. Legal Goods**

The Government claims the cigarettes seized from Defendant Harry Smiskin's property were not "legal goods" because no steps were taken by Defendants to make them legal.  The Court rejects this proposition. Unstamped cigarettes in Washington State are not deemed "contraband" under the CCTA if they are in the possession of a person authorized by state law to possess them.  For reasons explained in the Court's May 31, 2005, Order, Yakama Tribal members are authorized to possess and transport unstamped cigarettes regardless of whether they pre-notify Washington State of their intention to transport them.  Thus, Defendants, as Yakama Tribal members, were not required to do anything, as suggested by the Government, to convert the cigarettes allegedly in their possession from contraband to legal goods.

**D. Pre-Notification as an Affirmative Defense**

The Government next argues the pre-notification exception is an affirmative defense that must be proved by Defendants before what are otherwise deemed contraband cigarettes become legal goods.  The Court rejects this argument on the basis of the Court's earlier determination the pre-notification process does not apply to Defendants.  Even if pre-

notification is an affirmative defense that must be proved by typical CCTA defendants, it is not a defense useful to Defendants in this case because the pre-notification requirement does not apply to them.

**E. Minimal Burden Test**

The Government also reasserts its belief the "minimal burden test" found in *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134 (1979), should be employed in this instance to determine whether the Washington State pre-notification process applies to Defendants despite the terms of the 1855 Treaty.  The Court once again rejects this argument.  Although several treaties, including the 1855 Treaty, were briefly discussed in the *Colville*, the opinion merely discusses states' authority to impose minimal burdens on tribes' sovereignty rights, which arise independent of treaties. *Id.* at 156.

**E. Pandora's Box**

Finally, the Government expresses its continued belief the Court's May 31, 2005, Order permits Yakama Tribal members to transport *all* goods, including forbidden fruits, vegetables, plants, and animal, regardless of any state regulations.  As was the case when Defendants' Motions to Dismiss were heard, the Court is not persuaded by the Government's "Pandora's box" analogy.  While the Court's May 31, 2005, Order does prohibit the Government from prosecuting Yakama Tribal members under the CCTA in certain situations, nothing in the Order restricts Washington State's ability to keep roadways safe and open for travel or from continuing to regulate the possession or transportation of other goods.

ORDER ~ 7

1      Accordingly, **IT IS HEREBY ORDERED:** Government's Motion for

2  Reconsideration **(No. CR-04-2107-EFS: 53; No. CR-04-2108: Ct. Rec. 56)** is

3  **DENIED.**

4      **IT IS SO ORDERED.**  The District Court Executive is directed to enter

5  this order and to provide copies to all counsel.

6      **DATED** this 24th  day of October, 2005.

7

8                              S/ Edward F. Shea
                               EDWARD F. SHEA
9                    United States District Judge

10 Q:\Criminal\2004\2107,2108.reconsideration.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 8